UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENCHMARK INVESTMENTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRETT BORGERSON and <br> HARRYMAX CONSULTANTS, LLC, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT** |

Plaintiff Benchmark Investments, LLC, by and through its undersigned counsel, files this complaint against Defendants Brett Borgerson and HarryMax Consultants, LLC, and alleges as follows:

## INTRODUCTION

1. Benchmark Investments, LLC ("Plaintiff" or Benchmark") seeks a declaration from the Court finding that it is not liable to Brett Borgerson ("Borgerson") or HarryMax Consultants, LLC ("HarryMax," and collectively, with Borgerson, "Defendants") pursuant to any claim at law or equity arising from the commission Plaintiff received from the financial transaction set forth herein.

## THE PARTIES, JURISDICTION AND VENUE

2. Benchmark is a limited liability company organized under the laws of Nevada with its principal place of business in New York County.

3. Defendant Borgerson is a natural person who upon information and belief is a resident of Freehold, New Jersey and the manager and member of HarryMax.

4. Defendant HarryMax is a limited liability company that is, upon information and belief, organized under the laws of the state of Florida.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1

1332, in that the parties are diverse and the amount in controversy exceeds the sum or value of $75,000.

6. The Court has personal jurisdiction over Defendants as each is subject to the jurisdiction of the courts of the State of New York as Defendants transact business within the State of New York and/or contract outside the state to supply goods or services in the State of New York. *See* CPLR § 302(a).

7. The Court also has personal jurisdiction over Defendants in that they appear to claim to be third-party beneficiaries to the Finder's Agreement (defined below) in which the parties consented to the exclusive jurisdiction of the federal and state courts in New York County.

8. Venue also is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district and/or a substantial part of the property that is the subject of this action is situated in New York County.

## FACTS COMMON TO ALL CLAIMS

9. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

10. Benchmark is a broker-dealer registered with the Securities and Exchange Commission (SEC) and is a member firm of the Financial Industry Regulatory Authority (FINRA).

11. From 1995 until March 2007, Borgerson was a registered securities broker having worked at approximately ten securities firms during this time.

**The OCI Transaction**

12. In or about April 2022, representatives of OCI Limited ("OCI"), contacted Benchmark in connection with a possible transaction between OCI and its client, which is a large multi-national corporation.

13. Upon information and belief, OCI is a business based in London, England that acts

as a supply chain procurement partner to large corporations and governments.

14. Defendant Borgerson, along with non-party, Rupin Banker, were acting on behalf of and/or as representatives of OCI when they contacted Benchmark.

15. Benchmark then contacted Camshaft Capital Fund, LP ("CCF"), a hedge fund based in Miami, Florida, and shared with CCF the nature of the transaction contemplated between OCI and its client.

16. CCF informed Benchmark that it could assist in the transaction contemplated by OCI and its client.

17. Upon information and belief, in late April 2022, OCI's client and CCF closed a transaction in which OCI's client purchased a $318 million limited partnership interest in CCF and CCF, in turn, would loan a portion of the $318 million to OCI.

**The Finder's Agreement**

18. Benchmark and CCF along with Camshaft Capital Management, LLC ("CCM"), which is the general partner of CCF, entered into a written agreement dated April 26, 2022 (the "Finder's Agreement") that set forth, *inter alia,* Benchmark's compensation in connection with the OCI Transaction.

19. The Finder's Agreement expressly states: "[f]or the avoidance of doubt… upon the closing of the OCI Transaction, Camshaft[1] agrees to pay EF Hutton[2] a referral fee (the OCI Fee") equal to 70.666667% of the result of (a) $9,000,000, minus (b) any direct third-party expenses incurred in relation to the OCI Transaction."

20. The Finder's Agreement does not contain any third-party beneficiaries, nor does it identify either Defendant as a person or entity entitled to receive any portion of the OCI Fee.

---

[1] The Finder's Agreement defined CCM and CCF collectively as "Camshaft."
[2] The Finder's Agreement defined Plaintiff as "EF Hutton, division of Benchmark Investments, LLC a Nevada limited liability company ('EF Hutton')…."

21. The Finder's Agreement contains a choice of law, choice of jurisdiction and venue provision that provides:

> This Agreement shall be governed by and construed under the laws of the State of New York, United States of America without regards to the conflicts of law provisions of any jurisdiction. Further, each of the Parties hereby irrevocably consent to the exclusive jurisdiction and venue of the state and federal courts located in the County of New York, New York for the adjudication of any dispute related, directly or indirectly, to this Agreement and/or any transaction or relationship contemplated hereby.

**The OCI Transaction Closes; Benchmark Receives its OCI Fee**

22. On or about April 29, 2022 the OCI Transaction closed.

23. In connection with the closing, on April 29, 2022, Borgersen visited Plaintiff's offices at 590 Madison Avenue, New York, New York.

24. Upon information and belief, Borgersen visited Plaintiff's offices as a representative and/or consultant on behalf of OCI.

25. At no time prior to the closing of the OCI Transaction did Borgersen identify himself as a representative of HarryMax.

26. On April 29, 2022, Benchmark, CCF and CCM executed the Flow of Funds Closing Memorandum (the "Flow of Funds"), which set forth the gross proceeds of OCI Transaction and provides that pursuant to the Finder's Agreement that CCF/CCM are to wire $5,865,333.36 to Benchmark (*i.e.,* the OCI Fee). The Flow of Funds does not identify Defendants as recipients of the OCI Fee or any other monies.

27. Thereafter, Camshaft wired the OCI Fee to Benchmark.

**Defendants' Civil Theft Letters**

28. On August 11, 2022, counsel for Defendants emailed Benchmark a demand letter (the "First Demand Letter") claiming Defendants were due $3 million from Plaintiff's OCI Fee, *i.e.,* approximately fifty percent of the OCI Fee received by Benchmark. A copy of the First Demand

4

Letter is annexed hereto as Exhibit ("Ex.") 1.

29. The First Demand Letter contains several unsupported and false claims, including, but not limited to:

(i) "HarryMax was instrumental in contributing to the transaction that was consummated between OCI, [OCI's client], and Camshaft." But HarryMax was not involved in any aspect of the OCI Transaction. In fact, it was not until Plaintiff received the First Demand Letter, that it even learned of the existence of HarryMax.

(ii) "E.F. Hutton[3] knew that OCI agreed to pay Camshaft $9 million dollars of prepaid interest in order to compensate HarryMax, EF Hutton and Camshaft for their involvement in this transaction." HarryMax, however, was not involved in the OCI Transaction. Plaintiff is unaware of any agreement in which OCI agreed to pay Camshaft who in turn would compensate HarryMax.

(iii) "[i]t was agreed that this $9 million dollars for fees would be paid to Camshaft, and Camshaft and HarryMax agreed that Camshaft would then disburse to HarryMax, $3 million dollars." Upon information and belief, this alleged agreement between Camshaft and HarryMax did not occur.

(iv) "Nevertheless, E.F. Hutton interfered with the oral agreement between HarryMax and Camshaft and convinced and/or pressured Camshaft into sending [Benchmark] the $3 million dollars allocated to HarryMax under the guise and false representation that [Benchmark] would pay HarryMax." Ex. 1, p. 1. This is false for various reasons: first, upon information and belief, there was no oral agreement between HarryMax and Camshaft, and even if such oral agreement existed, it would be unenforceable against Plaintiff; second, Plaintiff did not convince or pressure Camshaft into sending the OCI Fee to Plaintiff, rather, Benchmark received its OCI Fee

---

[3] Defendants' counsel misaddressed the First Demand Letter to "E.F. Hutton Group", apparently unaware that "E.F. Hutton" is the investment banking division of Benchmark.

pursuant to the Finder's Agreement, which was negotiated by sophisticated parties and their respective counsel; and third, Benchmark never informed Camshaft or anyone else that it would pay HarryMax.

30. Relying on these brazenly false assertions, Defendants' counsel threatened that unless Benchmark pays HarryMax $9 million – *i.e.,* triple the amount HarryMax claims it was to receive from the OCI Transaction – by September 10, 2022, HarryMax will commence litigation against Benchmark:

> HarryMax now demands from E.F. Hutton $9 million dollars in damages. E.F. Hutton now has thirty (30) days to pay HarryMax $9 million dollars and HarryMax will then give E.F. Hutton a written release from further civil liability for the specific act of theft or exploitation against HarryMax. If E.F. Hutton does not respond to this demand, then HarryMax will proceed with its cause of action for treble damages against E.F. Hutton….

Ex. 1, p. 2.

31. By letter dated August 19, 2022, counsel for Defendants sent a second demand letter (the "Second Demand Letter"), which was addressed to Benchmark, rather than the "E.F. Hutton Group", but otherwise asserted the same baseless claims and threats of litigation set forth in the First Demand Letter. A copy of the Second Demand Letter is annexed hereto as Ex. 2.

32. On September 6, 2022, Defendants' counsel sent yet another demand letter to Plaintiff (the "Third Demand Letter"). A copy of the Third Demand Letter is annexed hereto as Ex. 3.

33. The Third Demand Letter asserts different, albeit still baseless, claims that materially contrast to the claims made by Defendants' counsel in the First Demand Letter and the Second Demand Letter.

34. Defendants now claim that "E.F. Hutton was successful in locating Camshaft" (Ex. 3, p.1), but then immediately contradict itself to claim that it was Borgersen who referred Camshaft

to OCI: "[a]fter Mr. Borgersen recommended Camshaft to OCI, neither HarryMax nor Brett Borgerson had any input or involvement in the negotiations between OCI, [OCI's client] and Camshaft." Ex. 3, p. 1.

35. The claim the Third Demand Letter that Defendants had an extremely limited role in the OCI Transaction also contradicts Defendants' allegations in the First and Second Demand Letters that "HarryMax was instrumental in contributing to the transaction that was consummated between OCI, [OCI's client] and Camshaft." Exs. 1 and 2, p. 1.

36. Defendants also now claim that "… it was agreed by OCI that instead of OCI paying $3 million in interest per year for three years, OCI would pay $9 million up front to [CCM], predicated on $3 million being paid to HarryMax/Brett Borgersen as a finder's fees and a portion of said monies to be paid to E.F. Hutton." Ex. 3, p. 2.

37. Defendants newly minted claim that an agreement existed between OCI and an unidentified party in which the parties agreed that Defendants would receive part of the OCI Fee, is contrary to their allegations in the First and Second Demand Letters that an oral agreement existed between Camshaft and HarryMax concerning the fee allegedly due HarryMax: "Camshaft and HarryMax agreed that Camshaft would then disburse to HarryMax, $3million dollars…. Nevertheless, E. F. Hutton interfered with the oral agreement between HarryMax and Camshaft." Exs. 1 and 2.

38. Apparently, Defendants have abandoned their claim that oral agreement existed between HarryMax and Camshaft concerning Defendants received commission from the OCI Transaction. Now, Defendants claim that an agreement existed between OCI with an unknown counterparty that entitles Defendants to a portion of the OCI Fee received by Plaintiff.

39. Plaintiff, however, never entered into any agreement with OCI concerning the OCI Transaction and/or the OCI Fee.

7

40. Defendants also claim that Plaintiff "falsely represented to Camshaft/CCM and OCI that E.F Hutton would take responsibility to make sure HarryMax/Brett Borgersen would receive its full finder's fee. Based on [Plaintiff's] representation, Camshaft/CCM sent to E.F. Hutton, the portion of the $9 million dollars that was designated as a finder's fee to HarryMax/Brett Borgersen." Ex. 3, p. 2.

41. Plaintiff made no such representation to Camshaft or OCI.

42. Moreover, Defendants' claim that Plaintiff represented to CCM or CCF is contrary to the Finder's Agreement, which contains an integration clause[4] confirming that along with the non-disclosure agreement between Benchmark and Camshaft that they constitute the entire agreement between Plaintiff and Camshaft. Neither the Finder's Agreement nor the Flow of Founds signed by CCF and CCM contain any language concerning payment to either Defendant or even reference Defendants.

43. Relying on these false accusations against Plaintiff, Defendants allege that Plaintiff "converted" $3 million dollars belonging to Defendants. Ex. 3, p.2.

44. Based upon this claim of conversion, Defendants demand that Plaintiff pay Defendants $9 million dollars by October 5, 2022, which if not paid, will result in Defendants commencing a lawsuit against Plaintiff. *See id.*

## COUNT I

45. Plaintiff hereby re-alleges and incorporates each and every paragraph above as if fully set forth herein.

46. An actual controversy within this Court's jurisdiction has arisen between the parties and now exists within the meaning of 28 U.S.C. § 2201.

---

[4] The integration clause states: "Entire Agreement.  This Agreement and the Nondisclosure Agreement shall constitute the entire agreement among the Parties and supersede all prior understandings and agreements between the Parties with respect to the subject matter hereof."

47. Defendants contend that Plaintiff converted from the OCI Fee approximately $3 million dollars that is due to Defendants.

48. Plaintiff contends that Defendants are not entitled to any portion of the OCI Fee that was paid to Plaintiff pursuant to the Finder's Agreement; Plaintiff did not convert any monies due Defendants; and that if an agreement exists between OCI and Defendants or CCM/CCF and Defendants that Plaintiffs were not a party to such alleged agreements, and therefore, such agreements would not be binding on or enforceable against Plaintiff.

49. Plaintiff also contends that because HarryMax is not a registered broker dealer and HarryMax is not a registered representative of a broker dealer, it would be impossible for Benchmark to pay Defendants any fee or commission arising from the OCI Transaction as it would violate Federal law, including Section 15(a)(1) of the Exchange Act, and/or FINRA Rule 2040.

50. Plaintiff requests a declaration from this Court that it is not liable to Defendants under law, including, but not limited to, Florida Statute § 772.11, or equity for any amount, including, any portion of the OCI Fee received by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Benchmark respectfully requests that this Court enter a judgment in its favor and against Defendants as follows:

(i) On Count I, declaring and determining that Plaintiff is not liable, under any theory under law or equity, to Defendants for any amount arising from the OCI Transaction or otherwise; and

(ii) Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 9, 2022

        EF HUTTON, a division of
        BENCHMARK INVESTMENTS, LLC

        By: /s/ Ryan J. Whalen

        Ryan J. Whalen, Esq.
        Deputy General Counsel, Head of Litigation
        590 Madison Avenue, 39th Floor
        New York, NY 10022
        Tel.: (212) 970-5181
        Email: rwhalen@efhuttongroup.com

        *Attorney for Benchmark Investments, LLC*